Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Todd Logan (SBN 305912)
tlogan@edelson.com
Yaman Salahi (SBN 288752)
ysalahi@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **SARA MEDINA** and **ALICIA MARTINEZ**, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> **TWO JINN, INC.**, a California corporation, d/b/a **ALADDIN BAIL BONDS**; **ADLER WALLACH & ASSOCIATES, INC.** d/b/a **AWA COLLECTIONS**, <br><br> *Defendants*. | Case No. 3:22-cv-02540-TLT (DMR) <br><br> **[PROPOSED]** ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION IN RE: PLAINTIFFS AND DEFENDANT ADLER WALLACH & ASSOCIATES, INC. |

Unless otherwise ordered by the Court or stipulated by the parties, the term "Parties" as used herein refers only to Plaintiffs Sara Medina and Alicia Martinez and Defendant Adler Wallach & Associates, Inc., not Defendant Two Jinn, Inc.

### 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules. Any disputes arising out of the production of documents subject to this Order shall be resolved according to

the Federal Rules of Civil Procedure, the Civil Local Rules, and this Court's Standing Orders.

## 2. COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. LIAISON

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 4. PRESERVATION

    a.  The Parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that:

1) Only ESI created or received after January 1, 2015 will be preserved;
2) The Parties will meet and confer regarding a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved (e.g., "HR head," "scientist," and "marketing manager"). The Parties shall add or remove custodians as reasonably necessary;
3) The Parties will meet and confer regarding the number of custodians per party for whom ESI will be preserved;

    b.  The Parties agree the following categories of ESI are inaccessible and are not discoverable, and do not need to be searched:

1) deleted, slack, fragmented, or unallocated data on hard drives;
2) random access memory (RAM) or other ephemeral data;
3) on-line access data such as temporary internet files, history, cache, cookies,

etc.;

4) server, system, or network logs; and

5) data remaining from systems no longer in use that is unintelligible on the systems in use;

6) any files that are zero-bytes in size;

7) data in metadata fields that are frequently updated automatically, such as last-opened dates;

8) structural files not material to individual file contents (e.g., CSS, .XSL, .XML, .DTD, etc.);

9) Systems that can no longer be accessed;

10) Any other data that is not reasonably accessible after meet-and-confer by counsel on a case-by-case basis.

**5. SEARCH**

The Parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery.

**6. PRODUCTION FORMATS**

The Parties shall produce documents in the formats set forth in Appendix 1 and 2 hereto, unless otherwise agreed to. If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents. The Parties shall not degrade the searchability of documents as part of the document production process.

The Parties agree that documents that exist only in hard copy format may be produced as scanned images without following the specifications of Appendix 1 and 2. Each separate document shall be scanned and produced as a distinct file, and the Bates stamp should be reflected in the file name as well as in the lower right hand corner of the document scan.

Plaintiff further agrees that structured transactional data may be produced in Native format without following the specifications of Appendix 1 and 2. Such transactional data files

should be produced with their Bates number reflected in the filename.

## 7. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to phase the production of ESI and the initial production will be from appropriate sources or custodians. Following the initial production, the Parties will continue to prioritize the order of subsequent productions.

## 8. DOCUMENTS PROTECTED FROM DISCOVERY

a) Pursuant to Fed. R. Evid. 502(d), the production of a document subject to protection by the attorney-client privilege and/or work-product doctrine, joint defense, or other similar doctrine, or by another legal privilege protecting information from discovery, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

b) Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. The provisions of Rule 502(b) do not apply.

c) Upon notification by producing party to the receiving party after discovery that privileged materials (hereinafter referred to as the "Privileged Materials") have been produced, the Privileged Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party, and no use thereof shall be made by the party to whom such Privileged Materials were produced. The receiving party shall use reasonable efforts to segregate Privileged Materials and any notes or work product (or portions of work product) reflecting the contents of any Privileged Materials and the receiving party will not review or use such segregated Privileged Materials and/or work product unless the Court determines the Privileged Materials to not be privileged. The Privileged Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location where the documents are stored. The contents of the Privileged Materials shall not be disclosed to anyone. The party returning the Privileged Materials may move the Court for an order compelling production of some or all of the material returned or destroyed, but the basis for such a motion may not be the fact or circumstances of the production.

d) If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production

      of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Stipulated Order re: Discovery of Electronically Stored Information.

e)   Communications between a party and their counsel that post-date the filing of the complaint need not be placed on a privilege log. Communications amongst counsel for a party concerning this litigation need not be placed on a privilege log regardless of date. As a general matter, documents produced with privilege redactions need not be placed on a privilege log, so long as the producing party determines in good faith that the face of the produced document provides sufficient information for the receiving party to understand and evaluate the assertion of privilege. A receiving party may request that the producing party log a particular redaction or subset of redactions.

f)   In addition to privilege-based redactions, a producing party may redact personal information such as social security numbers, taxpayer-identification numbers, driver's license numbers, credit card numbers, passport numbers, financial or bank account numbers, passwords, or information relating to medical or health issues of an individual.

## 9. MISCELLANEOUS PROVISIONS

### a) Objections Preserved.

Nothing in this Order shall be interpreted to require disclosure of either irrelevant information or relevant information protected by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege or immunity. Except as provided expressly herein, the Parties do not waive any objections as to the production, discoverability, authenticity, admissibility, or confidentiality of Documents and ESI.

### b) Technical Variances.

Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the Parties, confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of Documents or ESI. No party shall unreasonably object to any such variance.

### c) Hard Copy Document Storage.

During the pendency of this litigation, the parties shall make reasonable efforts to preserve the originals of all hard copy documents as to which there may be issues of legibility of

all or any part of the production copy. Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

**10. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS ORDERED**.

Dated: June 13, 2023



HONORABLE DONNA M. RYU
CHIEF MAGISTRATE JUDGE

# APPENDIX 1
# PRODUCTION DELIVERY REQUIREMENTS

**I.      GENERAL PRODUCTION PROVISIONS**

ESI should be produced as TIFF or JPG images and in Native format where applicable with accompanying data and image load files.

   **A.      Image Files.**

All Documents, with the exception of Documents produced in Native Format, will be produced as single-page black and white Group IV TIFF image files of at least 300 dpi resolution with 1 bit depth. Documents produced in color shall be produced in JPG format. Page size shall be 8.5 x 11 inches, unless in the reasonable judgment of the producing party, a particular item requires a different page size. Each image file will use the Bates number of the page as its unique file name. Original document orientation as displayed in the native file should be maintained in the PDF or TIFF image (i.e., portrait to portrait and landscape to landscape).

   **B.      Text Files.**

Each Document produced under this Order shall be accompanied by a document level text file containing all of the text for that document, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding document. The text files shall be generated by extracted text from native files and OCR text files from hard copy scanned documents, documents that do not contain electronically extractable text, and redacted documents being produced in image format, as applicable. The .DAT load file shall include a link to the corresponding text file.

   **C.      Bates Numbering.**

      a.      Each image produced under this Order should be assigned a Bates number that must: (1) be unique across the entire document production; (2) maintain a constant length of nine numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters, no special characters or embedded spaces; and (4) be sequential within a given Document. The producing party will identify the Bates number range of each production in a cover letter or production log accompanying the production.  If a producing party skips a Bates number or set of Bates numbers in a production, the producing party will identify and note the gap in the cover letter or production log accompanying the production.

      b.      The producing party will brand all images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size. If the receiving party believes that a Bates number obscures the content of a Document, then the receiving party may request that the Document be produced with the Bates number in a different position.

### D. Parent-Child Relationships.

Parent-child relationships for all ESI document families (e.g., the association between an attachment and its parent email, or), must be preserved by assigning sequential Bates numbers to all items within the parent- child group, and identifying those Bates numbers in the relevant ESI metadata and coding fields specified in Appendix 2. For example, if a party is producing an email with embedded attachments or hyperlinked documents, the attachments or hyperlinked documents must be processed and assigned Bates numbers in sequential order, following consecutively behind the parent email. Not all attachments may be produced – for example, privileged attachments which are removed should be replaced with a slipsheet as placeholder.

### E. Color Documents.

If an original ESI Document contains color text, markings or graphics, and the receiving party reasonably believes it is necessary to view such Document in its original color to understand its full meaning or content, then the receiving party may request that the ESI Document be produced in color format. The producing party shall then reproduce such Document(s) and/or ESI in color JPEG format, or in native format. This section also applies to documents that are produced as TIFF images.

### F. Confidentiality Designations.

If a particular Document has a confidentiality designation, the designation shall be stamped on the face of all images pertaining to such Document, in the lower left-hand corner of the Document, or as close thereto as possible while preserving the underlying image. If the receiving party believes that a confidentiality designation obscures the content of a Document, then the receiving party may request that the Document be produced with the confidentiality designation in a different position. No party may attach to any filing or any correspondence addressed to the Court (including any Magistrate Judge), or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy (whether electronic or otherwise) of any native format Document produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears on the Document. Also, any documents marked Confidential must be handled in accordance with the Protective Order entered in this case.

## II. PRODUCTION OF "ESI"

### A. Native Files

Certain files types, such as spreadsheet-application files (e.g., MS Excel, .csv), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), shall be produced in native format. For files produced only in native format, the producing party shall provide a single-page slip- sheet with the applicable Bates stamp indicating that a native item was produced. The corresponding load (.DAT) file shall include a NativePath which provides the relative path linking information for each native file that is produced. In addition, the confidentiality designation will be indicated in the

name of the native file where reasonably feasible. If the Receiving Party reasonably believes it is necessary to view certain Documents in their native format to understand their full meaning or content, then the Receiving Party may request that the ESI Document be produced in native format.

1. **Hidden text.** ESI shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text, notes, or worksheets, speaker notes, tracked changes, redlines and comments.

2. **Compressed Files and Encrypted Files.** Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files. The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (e.g., because password-protected) and that can be reasonably unencrypted.

3. **Metadata and Coded Fields.** ESI items shall be produced with all of the metadata and coding fields set forth in Appendix 2, if available.

This Order does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original metadata of the Document; provided, however, that the producing party must populate, where possible, the BegBates, EndBates, BegAttach, EndAttach, Custodian, NativeFileLink TextPath, AllCustodian, and MD5 hash, if applicable.

### III. DATABASES, STRUCTURED, AGGREGATED OR APPLICATION DATA

The Parties will meet and confer to address the production format.

### IV. PRIVILEGE & REDACTIONS

A. To the extent that a party reasonably determines that e-mail or related attachments that are responsive to a document request are not discoverable because they are subject to a Privilege, the party shall produce a log treating each e-mail and attachment withheld separately.

B. Where ESI items need to be redacted, they shall be produced in TIFF format with each redaction clearly indicated or where TIFF format is not practicable, in redacted native format, as noted below. Documents that are to be produced in native format, but that require redactions may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is a video or spreadsheet), the producing party may produce a copy of the native file with redactions applied via a native redaction tool (e.g. Relativity Redact).

## V. PRINTING SPECIFICATIONS FOR EXCEL AND POWERPOINT FILES

1. For Excel files that are printed to TIFF for redaction and redacted, the following printing options shall be enabled:

2. <u>Excel Print to TIFF Options</u>:
   - Unhide columns and rows
   - Unhide worksheets
   - Autofit columns and rows, settings to be over by columns first and, then down by rows
   - Wrap text
   - Print gridlines
   - Do not apply Autofilter
   - Display headings
   - Display comments
   - Header and Footer filename field handling:  Show field code

3. <u>PowerPoint Print to TIFF Options</u>:
   - Print notes pages
   - Print hidden slides
   - Print comments

4. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images because of redactions are formatted so as to be legible.

## VI. DE-DUPLICATION AND DOCUMENT FAMILIES

1. ESI may be de-duplicated globally at the parent level using MD5 hash or SHA-1 hash. For emails, de-duplication may be performed using a hash calculated using combination of metadata fields. Such hash shall, at a minimum, account for all sender and recipient metadata including BCC recipients, the email subject, date sent, and attachment names.

2. If the Parties intend to apply email threading as part of their review, the Parties may meet and confer to reach an agreement regarding the methodology used for suppression and means of preserving and producing information about any suppressed email.

3. "Near duplicate" documents shall be produced rather than removed. The producing party need only produce a single copy of duplicate ESI.

4. The hash value for each item shall be reflected in the .DAT load file in the HashValue field specified in Appendix 2. If a producing party elects to de-duplicate globally, the producing party shall make a reasonable effort to identify all custodians from whom a de-duplicated Document was collected in the AllCustodian metadata field specified in Appendix 2.

     5.     De-duplication shall not break apart families and shall be performed at a family level. A document and all other documents in its attachment range, emails with attachments all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged and no such member shall be withheld from production as a duplicate.

## VII.    LOAD FILES

     1.     The data load file should be in standard Concordance format (.DAT). The .DAT file shall contain a relative path to the corresponding Native file.

     2.     Concordance Data Load Files: The data load file should use standard Concordance delimiters:

        a.   Column - ¶ (ASCII 20);
        b.   Quote - þ (ASCII 254);
        c.   Newline - ® (ASCII 174).
        d.   The first line of the .DAT file should contain the field names arranged in the same order as the data is arranged in subsequent lines.
        e.   All date fields should be produced in mm/dd/yyyy format, if possible.
        f.   Date fields may be combined date/time fields.
        g.   All produced attachments should sequentially follow the parent Document/email.

     3.     The image load file must be in standard Option (.OPT) format and must reference each image file in the corresponding production, and if the TIFF format is used then the total number of TIFF files referenced in the load file must match the total number of image files in the production. The total number of Documents referenced in a production's data load file should match the total number of designated Document breaks in the corresponding image load file for that production. In any deliverable volume, documents should be organized in such a way that each folder in the volume contains 1000 files.

        a.   Every image in the delivery volume should be cross-referenced in the image load file.
        b.   The imageID key should be named the same as the Bates number of the page.
        c.   Load files should not span across media (e.g., CDs, DVDs, hard drives, etc.), i.e., a separate volume should be created for each piece of media delivered.

     4.     OCR/Extracted Text Files: OCR or Extracted Text files shall be provided in a separate directory containing Document level text files. The .DAT file shall contain a relative path to the corresponding text file. OCR or Extracted text itself should not be included in the .DAT file.

## APPENDIX 2: ESI METADATA AND CODING FIELDS

The chart below describes the metadata fields to be produced, if reasonably accessible. Any ambiguity about a metadata field should be discussed with the receiving party prior to processing the subject ESI for production.

| Field Name | Field Description |
|---|---|
| Begin Bates | First Bates number (production number) of an item |
| End Bates | Last Bates number (production number) of an item<br>**The EndBates field should be populated for single-page items. |
| AttachNames | File name of the attachment, with any attachments separated by semi-colon. |
| BeginFamily | First Bates number of family group. |
| EndFamily | Last Bates number of family range (*i.e.*, Bates number of the last page of the last attachment) |
| Pages | Number of pages in the item |
| Custodian | Name of person or source from whose/which files the item is produced |
| All Custodians | Name of the person(s), in addition to the Custodian, from whose files the item would have been produced if it had not been de-duplicated |
| File Size | Size (in kilobytes) of the source native file |
| HashValue | The MD5 or SHA-1 or IntMsgID hash value of the item. Alternative metadata fields for this value include "MD5 Hash" or "SHA1 Hash" |
| NativePath | Relative path for documents provided in native format only.<br>**The linked file must be named per the BegBates value. |
| RecordType | Indicates item type (e.g., email, edoc, attachment). MIME type is an acceptable alternative to this metadata field. |
| File Extension | Indicates file extension of the file e.g., .docx, .pptx |

| | |
|---|---|
| Date Sent (mm/dd/yyyy) | Date email or calendar item was sent |
| TimeSent (hh:mmAM/PM) | Time email or calendar item was sent (Date and time fields may be combined) |
| Date Received | Date email or calendar item was received |
| TimeReceived | Time email or calendar item was received (Date and time fields may be combined) |
| To | The names and/or SMTP email addresses of all recipients that were included on the "To" line of the email or calendar item |
| From | The name and/or SMTP email address of the sender of the email or calendar item |
| CC | The names and/or SMTP email addresses of all recipients that were included on the "CC" line of the email or calendar item |
| BCC | The names and/or SMTP email addresses of all recipients that were included on the "BCC" line of the email or calendar item |
| AttachCount | Number of attached, embedded or grouped items |
| Date Created (mm/dd/yyyy) | Date the item was created |
| TimeCreated (hh:mm AM/PM) | Time the item was created (Date and time fields may be combined) |
| ModifiedBy | Person who last modified or saved the item, as populated in the metadata or document properties of the native file |
| Date Modified (mm/dd/yyyy) | Date the item was last modified |

| | |
|---|---|
| LastModTime (hh:mm AM/PM) | Time the item was last modified. (Date and time fields may be combined) |
| FileName | The filename of the source native file for an ESI item |
| Title | Any value populated in the Title field of the source file metadata or item properties |
| Subject/E-Mail Subject | Any value populated in the Subject field of the source file metadata or document properties (e.g., subject line of email or calendar item) |
| Author | Value populated in the Author field of the source file metadata or document properties |
| TextPath | Full relative path to the location of the document-level text file. |