UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA MEDINA, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>TWO JINN, INC., et al.,<br><br>        Defendants. | Case No. 22-cv-02540-RFL<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING MOTION TO CERTIFY CLASS**<br><br>Re: Dkt. Nos. 139, 176 |

      Plaintiffs challenge debts that they accrued by co-signing bail bonds agreements for the release of their loved ones from jail.  Because Plaintiffs were allegedly not provided required disclosures about their liabilities as co-signors, their debts are unenforceable under California law.  Nonetheless, the bail bonds company Two Jinn and collection agency AWA allegedly reported the debts as past due to credit reporting agencies, which Plaintiffs contend violated the California Consumer Credit Reporting Agencies Act ("CCRAA") and the Rosenthal Fair Debt Collection Practices Act.  Two Jinn's Motion for Judgment on the Pleadings, which AWA has joined, is granted with leave to amend as to the CCRAA claim, and without leave to amend as to the Rosenthal Act claim.  Because the debts are valid, though unenforceable, under California law, it was not inaccurate to report those debts as past due.  Plaintiffs' Motion to Certify Class is denied with the possibility of it being renewed as to the CCRAA claim if Plaintiffs are able to state such claim in an amended complaint.  A separate order will issue as to the outstanding sealing motions.  This Order assumes the reader's familiarity with the facts of the case, the procedural history, the applicable legal standards, and the arguments made by the parties.

**MOTION FOR JUDGMENT ON THE PLEADINGS**

*CCRAA Claim.* The operative complaint does not state a valid claim for relief under the CCRAA. As detailed in the Court's March 28, 2024, Order (Dkt. No. 171), the debts at issue are valid but unenforceable. The plain language of section 1799.91 does require the creditor to deliver the cosigner notice before the cosigner enters into the obligation. Cal. Civ. Code § 1799.91 ("Each creditor who obtains the signature of more than one person on a consumer credit contract shall deliver to each person who does not in fact receive any of the money, property, or services which are the subject matter of the consumer credit contract, *prior to that person's becoming obligated* on the consumer credit contract, a notice [as specified below.]" (emphasis added)). Remedies for violations of this provision are listed in section 1799.95, which provides that "[n]o action shall be brought, nor shall any security interest be enforced by any creditor or any assignee of a creditor on any consumer credit contract who fails to comply with this title[.]" Cal. Civ. Code § 1799.95. Per the statute's plain language, the only available remedy is to bar enforcement. *Id.* Plaintiffs' reading—that section 1799.91 invalidates debts undertaken without the appropriate notice—would render section 1799.95 entirely superfluous.

In their recent briefing, Plaintiffs urge the Court to look to the legislative intent to find that the debts should be invalidated. Legislative intent evidence does not defeat plain language, *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019), nor are the two incompatible in this case. Clearly, the Legislature was concerned about making sure that cosigners understood their obligations. However, the question here is not the degree of concern, but how this concern should be addressed when lenders failed to provide the required notice. Plaintiffs cite to the 1974 Uniform Consumer Credit Code and the 1972 Report of the Presidential Commission on Consumer Credit to show that the atmosphere around section 1799.95's enactment supported invalidation. *See* Unif. Consumer Credit Code 1974 § 3.208 ("A natural person, other than the spouse of the consumer, *is not obligated as a co-signer* . . . with respect to a consumer credit transaction, unless before or contemporaneously with signing any separate agreement . . . the person receives a separate written notice that . . . reasonably informs him of his obligations with

respect to it." (emphasis added)); Nat'l Comm'n on Consumer Credit, *Consumer Credit in the United States—Report of the National Commission on Consumer Finance* (Dec. 1972) at 39 ("No person other than the spouse of the principal obligor on a consumer credit obligation *should be liable as . . . co-signer . . . or otherwise assume personal liability* for its payment unless that person . . . also signs and receives a copy of a separate co-signer agreement which explains the obligations of a co-signer." (emphasis added)). What those citations show is that the Legislature has tools available to invalidate contracts when it so chooses. That is not what the Legislature chose in drafting section 1799.95. Here, the Legislature elected to use different language barring enforcement only, not rending the debts invalid.

Reporting a valid but unenforceable debt is neither false nor materially misleading. Courts routinely hold, for example, that it is not misleading or inaccurate to report delinquent debts that, although they cannot be the subject of an enforcement action due to an automatic bankruptcy stay, have not been discharged in bankruptcy and therefore remain legally valid. *See, e.g.*, *Harrold v. Experian Info. Sols., Inc.*, 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information."). It is therefore not incomplete or inaccurate under the CCRAA to merely report that a debt is owed and past due when the debt itself has not been extinguished. *Compare Mortimer v. JP Morgan Chase Bank, N.A.*, 2012 WL 3155563, at *3–5 (N.D. Cal. Aug. 2, 2012) (dismissing Fair Credit Reporting Act ("FCRA") and CCRAA claims where the creditor reported delinquencies after the plaintiff filed for bankruptcy), *with Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1252 (9th Cir. 2022) (finding reporting inaccurate when the relevant Arizona statute "abolished [the plaintiff's] personal liability" and "not just the lender's procedural remedies.").

That is not to say that creditors can never violate the CCRAA by reporting unenforceable debts. If the creditor reports true information—the amount of debt, that it is past due, etc.—that is not unlawful. If the creditor reports misleading information alongside that truthful information—for example, by implying that the creditor may sue to collect on the debt—that

may be sufficient to state a claim. *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143 (N.D. Cal. 2010), on which Defendants relied at the hearing, supports this view. The creditor there sued the plaintiff in state court, and then dismissed the suit after the plaintiff asserted affirmative defenses. *Id.* at 1149. After dismissing the suit, the creditor continued to report the plaintiff's debt to TransUnion, specifically reporting: the date placed for collection, that the account type was "Open," that it was "seriously past due," and that the "Pay Status" was "Collection Account." *Id.* The court inferred that the creditor "could no longer collect on the debt" after dismissing the state court action. *Id.* Because the creditor nevertheless "continued to report the debt in a manner that suggests it could still collect on it," the plaintiff's allegations were sufficient to state a CCRAA claim. *Id.*

Plaintiffs' allegations here do not similarly show reporting in a manner falsely suggesting enforceability. As to Medina, it is alleged that "AWA made false adverse credit reports to credit bureaus that Ms. Medina was past due on non-existent debt obligations … even though Ms. Medina disputed her liability for the debts … [and t]he debts were not valid against her because she was never provided the Section 1799.91 Notice." (Dkt. No. 97 ¶ 44.) As to Martinez, the Second Amended Complaint ("SAC") alleges that "AWA made false adverse credit reports to credit bureaus that Ms. Martinez was past due on non-existent debt obligations" and that AWA "furnished information to a national credit reporting agency that the … payments were 'seriously past due date[.]'" (*Id.* ¶¶ 56–57.) Nothing in the current allegations suggests, for example, that the accounts had been referred to a lawyer, were being handled by a settlement team, or had been marked as collections accounts. Saying that the debt is "seriously past due" does not, by itself, suggest that it could be collected on. That a credit applicant previously entered into a loan that they did not pay for a long time after the due date, even if the loan was unenforceable, is relevant information for creditors, and the law does not prohibit the provision of that truthful information. The Motion for Judgment on the Pleadings is thus granted as to the CCRAA claim, and the Court does not reach the remaining arguments on this claim.

At the hearing, Plaintiffs' counsel represented that they could amend to allege that the

4

reporting unlawfully implied enforceability. Although the Court is generally hesitant to permit amendment so late in a case, this would be Plaintiffs' first opportunity to amend with the benefit of the Court's guidance on this issue. Plaintiffs' counsel represented that evidence in the record shows that the debts were reported with notations including "collections account" and "assigned to attorney." Considering that similar reporting was found sufficient in *Wang*, it does not appear that amendment would be futile. Plaintiffs are therefore granted leave to amend the CCRAA claim.

*Rosenthal Act Claim.* Martinez's Rosenthal Act claim for threatening to take unlawful action is time barred. *See* Cal. Civ. Code § 1788.17 (incorporating 15 U.S.C. § 1692e(5)). Claims brought through the Rosenthal Act must be filed "within one year from the date of the occurrence of the violation." Cal. Civil Code § 1788.30(f). Martinez argues that she avoids this bar because Defendants reported her debt to credit agencies within that window.

The FCRA broadly preempts state law claims imposing requirements on those who furnish information to credit reporting agencies, with an exception for claims under the CCRAA. Specifically, the FCRA provides:

> No requirement or prohibition may be imposed under the laws of any State … with respect to any subject matter regulated under– … (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply–
>
> (i)   with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30, 1996); or
> (ii)  with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996)[.]

15 U.S.C.A. § 1681t(b). Under the plain text of Section 1681t(b), Martinez cannot base her Rosenthal Act claim on Defendants' furnishing of information about her debt to a credit reporting agency, because such a claim would be preempted.

Martinez attempts to save her claim by arguing that her Rosenthal Act claim regarding credit reporting is based on a violation of the federal Fair Debt Collection Practices Act

("FDCPA"), and therefore would not be preempted.  In her Opposition, Martinez contends that reporting her debt to a credit reporting agency would be an inaccurate credit report under the FDCPA, 15 U.S.C. § 1692e(8), which is incorporated into the Rosenthal Act.  The operative complaint, however, makes no reference to that provision of the FDCPA.  Also, as noted above, the SAC does not currently allege inaccurate reporting because it alleges only that her claim was reported as past due (Dkt. No. 97 ¶ 57).  Martinez cannot base her claim on allegations not made in the operative complaint.

Furthermore, even if Martinez were to amend to allege that an inaccurate credit report was made, that claim would still be preempted.  The plain text of Section 1681t(b)(1)(F) "clearly eliminate[s] all state causes of action against furnishers of information" unless, as relevant here, they are brought under the CCRAA.  *Pirouzian v. SLM Corp.*, 396 F. Supp. 2d 1124, 1130 (S.D. Cal. 2005).  Courts in this Circuit have consistently found such claims preempted.  *See id.* (holding that a Rosenthal Act claim brought for violating 15 U.S.C. § 1692e(8) is preempted by the FCRA); *Dewi v. Wells Fargo Bank*, 2012 WL 10423239, at *7 (C.D. Cal. Aug. 8, 2012) (same); *Corby v. Am. Exp. Co.*, 2011 WL 4625719, at *7 (C.D. Cal. Oct. 5, 2011) (same); *see also Khankin v. JLR San Jose, LLC*, No. 3:23-CV-06145-JSC, 2024 WL 1120118, at *5 (N.D. Cal. Mar. 14, 2024) (finding a claim based on supplying allegedly false information to credit reporting agencies "fits squarely within the activities regulated by § 1681s–2.").

*Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), which Plaintiffs cite, is not inconsistent.  In *Gorman*, the Ninth Circuit addressed whether the CCRAA's enforcement mechanisms, California Civil Code sections 1785.25(g) and 1785.31, were preempted by the FCRA.  *Id.* at 1170.  The court held that they were not, because the CCRAA's enforcement mechanisms did not require furnishers to obey any additional rules of law beyond those proscribed by the CCRAA in section 1785.25(a), which Congress explicitly saved from preemption, and because the statutes provided the only enforcement mechanisms for the expressly saved provision.  *Id.* at 1171.  It would make no sense for Congress to save the CCRAA without saving any enforcement mechanism at all.  "[T]he conclusion that Congress

6

explicitly retained the portions of the California statutory scheme that create obligations, without leaving in place any enforcement mechanism . . . would be an unlikely result at best." *Id.* at 1170. That rationale does not apply here. The Rosenthal Act is not the only mechanism to enforce the FDCPA, which has its own enforcement provisions. In sum, the FCRA preempts Martinez's Rosenthal Act claim to the extent it is based on inaccurate credit reporting. Without the credit reporting allegations, Martinez has not alleged any actionable conduct within the one year statute of limitations.

Martinez suggests that she could amend to state a non-time-barred Rosenthal Act claim based on an April 2021 letter uncovered in discovery. That letter allegedly stated "that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." (Dkt. No. 185 at 11 (quoting Dkt. No. 137-25).) That letter further stated that "[y]our creditor has placed your account for collection." (Dkt. No. 137-25.) That letter would not save the claim because it too is outside the statute of limitations.

Medina initially filed this action in state court on March 23, 2022, alleging that Two Jinn violated the UCL. (Dkt. No. 1-2.) On June 30, 2022, an amended complaint was filed that newly added Martinez as a plaintiff, AWA as a defendant, and claims for violation of the Rosenthal Act and CCRAA. (Dkt. No. 29.) Martinez alleges that this First Amended Complaint relates back to the date of the original Complaint, and that the April 2023 letter is therefore within the statute of limits. To relate back, claims in the amendment must "share a common core of operative facts such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (cleaned up). Both complaints arise out of Two Jinn's alleged failure to provide section 1799.91 notices to bail bonds cosigners. But the newly added Rosenthal Act claim requires additional facts not alleged in the original complaint: namely, that Defendants were debt collectors who threatened to take actions prohibited by law. The original Complaint makes no mention of letters or threats. At most, it alleges that Medina received phone calls demanding payment and it sought an injunction

prohibiting Two Jinn from seeking to demand or collect payments. (Dkt. No. 1-2 ¶¶ 20, 22.) Nothing in the original Complaint alleges that Defendants used false or misleading statements in their debt collection attempts or that they made any threats against Plaintiffs. *See In re Markus*, 313 F.3d 1146, 1150–51 (9th Cir. 2002).

More importantly, nothing in the record suggests that AWA "knew or should have known that it would have been named as a defendant but for an error." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010). The original Complaint focused on Two Jinn's failure to provide the required co-signer notices, not on the actions of any of its agents or the debt collectors with which it worked. As to collection attempts, it alleged that Two Jinn "representatives" made phone calls demanding payments, it did not allege that any third parties contacted Medina. (Dkt. No. 2-1 ¶ 20.) AWA, a third-party to whom Two Jinn "[e]ventually . . . outsourced its collection efforts" (Dkt. No. 97 ¶ 28), would have had no reason to know that it should have been named in the original Complaint but for a mistake of identity. That alone is fatal under Federal Rule of Civil Procedure 15(c)(1)(C)(ii). *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1203–04 (9th Cir. 2014). Accordingly, the First Amended Complaint does not relate back, and the proposed letter is not within the statute of limitations. The Motion for Judgment on the Pleadings is therefore granted as to the Rosenthal Act claim. Because amendment would be futile, dismissal is with prejudice and without leave to amend.

The undersigned recognizes that components of this Order may be inconsistent with the July 31, 2023, Order issued by the judge to whom the case was previously assigned. (Dkt. No. 110 at 15.) Plaintiffs had moved for leave to seek reconsideration of portions of the July 2023 Order based on what Plaintiffs characterized as a scrivener's error regarding the statute of limitations and a separate legal error in the preemption analysis. (Dkt. No. 160.) The undersigned denied the motion on March 28, 2024, based in part on analysis that differed from the July 2023 Order. (Dkt. No. 171.) This ruling on Defendants' Motion for Judgment on the Pleadings brings the Court's analysis of the legal sufficiency of the SAC into alignment with the

analysis in the undersigned's March 2024 ruling. It would be manifestly unjust to allow claims to proceed that have already been found to be legally barred under the analysis in the March 2024 Order. *See Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (allowing the district court to reconsider its own interlocutory order, if it finds the prior decision was clearly erroneous or manifestly unjust); *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 530 (9th Cir. 2000) ("[W]here either cogent reasons … exist a judge may set aside or reverse a prior ruling by a colleague in the same case."). Accordingly, for the reasons stated above, the Motion for Judgment on the Pleadings is granted, with leave to amend as to the CCRAA claim.

## MOTION TO CERTIFY CLASS

Plaintiffs seek to certify the "Unlawful Collections Class" and the "Unlawful Threats Subclass," both of which are based on the Rosenthal Act claims, and the "Unlawful Credit Reporting Class," based on the CCRAA claim. The Motion to Certify Class is denied.[1]

Certification is denied as to the Unlawful Collections Class and the Unlawful Threats Subclass because the Court has dismissed Plaintiffs' Rosenthal Act claims with prejudice. Plaintiffs cannot represent these classes because they lack cognizable claims under any of the proposed FDCPA sections incorporated into the Rosenthal Act. *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 560 (9th Cir. 2010) ("When a named plaintiff has no cognizable claim for relief, she cannot represent others who may have such a claim, and her bid to serve as a class representative must fail." (cleaned up)); *see also Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 858 (N.D. Cal. 2020) (denying class certification when the named plaintiff's claims were untimely). Since Plaintiffs' Rosenthal Act claims were dismissed, certification of the Unlawful Collections Class and the Unlawful Threats Subclass is denied.

Given that the Court has also dismissed the CCRAA claim, certification of the Unlawful Credit Reporting Class is denied as well. Denial here does not preclude Plaintiffs from re-raising the Motion after amendment. At the hearing, Plaintiffs speculated that, if the CCRAA claim was

---

[1] Two Jinn's Evidentiary Objections (Dkt. No. 178) are terminated as moot.

dismissed with leave to amend, they may require a limited amount of targeted discovery before moving again for class certification. Defendants anticipated pursuing further motions practice on any amended pleadings. Plaintiffs may therefore renew their Motion to Certify Class as to the Unlawful Credit Reporting Class or file a new class certification motion based on the surviving claim only as appropriate after amendment.

\* \* \*

The Motion for Judgment on the Pleadings is **GRANTED**. The CCRAA claim is **DISMISSED WITH LEAVE TO AMEND** and the Rosenthal Act claim is **DISMISSED WITH PREJUDICE, WITHOUT LEAVE TO AMEND**. The Motion to Certify Class is **DENIED**. If appropriate, Plaintiffs may renew the Motion to Certify Class as to the Unlawful Credit Reporting Class or file a new class certification motion after amendment.

If Plaintiffs wish to file a third amended complaint correcting the deficiencies identified in this order, they must do so within 21 days. Plaintiffs may not add new causes of action or parties without leave of Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15. If a third amended complaint is not filed by the deadline, the Second Amended Complaint will remain dismissed, judgment will be entered in favor of Defendants, and the case will be closed. If a third amended complaint is filed, Defendants must respond within 21 days.

A case management conference is set for October 16, 2024. The parties shall file a joint case management statement by October 9, 2024.

**IT IS SO ORDERED.**

Dated: August 21, 2024

RITA F. LIN
United States District Judge